[Civ. No. 924.  First Appellate District.—March 12, 1912.]

## J. KASCH, Respondent, v. LABOR TEMPLE ASSOCIATION, Appellant.

SALE OF LAUNDRY BUSINESS WITH PERSONAL PROPERTY—FALSE REPRESENTATIONS AS TO EXTENT OF BUSINESS—DEDUCTION OF DAMAGES FROM PRICE—RESCISSION IMPRACTICABLE.—Upon the sale of a laundry business, with the goodwill thereof, with horses, wagons, harness and storm robes, where $100 had been paid upon the price, and a balance of $500 was claimed thereupon, and defendant alleged that the contract was obtained by false representations, and claimed a rescission, and the court found that defendant was damaged to

the extent of $100 by the false representations, that the business had been delivered to defendant, and cannot be fully restored, that one of the horses had been sold, and no return of receipts was offered, it is held that the court did justice between the parties by deducting the $100 from the balance due, and rendering judgment for plaintiff for the residue.

ID.—RESTORATION OF STATUS ESSENTIAL TO RESCISSION OF CONTRACT.— The full restoration of the *status* of the other party is essential to the right of rescission of a contract therewith on the ground of alleged fraud; and where, upon the sale of a business, it becomes impossible, as the result of the execution of the contract, to place the parties *in statu quo,* there can be no rescission of the contract.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.  J. R. Welch, Judge.

The facts are stated in the opinion of the court.

Frank H. Benson, for Appellant.

Rogers, Bloomingdale & Free, for Respondent.

HALL, J.—This is an appeal from a judgment in favor of plaintiff and an order denying defendant's motion for a new trial.

Plaintiff and one Bloemer were copartners, and as such conducted a laundry business under the name of the Standard Electric Laundry, and, as is alleged in the complaint, on the twenty-seventh day of February, 1909, "entered into a contract in writing with the defendant Labor Temple Association, whereby they agreed to sell to said defendant their aforesaid laundry business and the goodwill thereof, also two horses, four wagons, two sets of harness and two storm robes, for a consideration of six hundred (600) dollars, to be paid as follows, to wit: 'One hundred (100) dollars upon the signing of said agreement, and five hundred (500) dollars upon the delivery of said business, such delivery and payment to be made within two weeks after the making and execution of said contract as aforesaid.' "

Plaintiff alleged full compliance with the conditions of the contract by the vendors, an assignment by Bloemer to plaintiff, and refusal to pay the balance of $500 by defendant.

By way of defense defendant pleaded that the execution of said agreement was procured by certain false and fraudulent representations as to the amount of business being done by the vendors, made by plaintiff, and a rescission and offer in writing, made March 25, 1909, to return all property received under the agreement, conditioned on plaintiff's paying to defendant the $100 paid on the execution of the contract of sale, and also denied performance by the vendors, save as to the delivery of the chattels mentioned.

The court, among other things, found that the contract was procured through the false and fraudulent representations of plaintiff, as alleged in the answer. That immediately upon the execution of said contract plaintiff and his assignor retired from the laundry business, and within the time limited by the contract delivered to the defendant the horses, wagons, harness and robes mentioned in the contract, and the business actually being done by the Standard Electric Laundry. That defendant has continued to carry on said business, using said personal property in connection therewith, but has disposed of one of the horses mentioned in said contract and delivered to defendant. That defendant offered to rescind said contract and to return said personal property and business, as alleged in the answer, but that defendant when said offer was made "was not, and is not now, able to restore said plaintiff and his assignor, or either of them, to the situation they were in with respect to said business at the time said contract was made and said property and business delivered to the defendant as aforesaid, nor to place said plaintiff and his assignor, or either of them, *in statu quo.*"

The court further found that defendant had been damaged by the false representations and failure of plaintiff in the sum of $100, and therefore deducted this amount from the balance due under the contract, and gave judgment for plaintiff for the balance, to wit, $400.

The first point urged by appellant seems to be that the court erred in finding that the vendors delivered the business actually being done by them to defendant. The finding as made is supported by the evidence.

The business of the vendors consisted of two routes. The driver of one of these routes was at once employed by defendant, and took charge of that route, and collected the work therefrom. Plaintiff went with the same driver for two weeks

over the other route, and, according to his testimony, called on all of the customers on that route, save two, who by other evidence were shown to have moved into the other route. It is true the evidence of plaintiff shows that a goodly portion of the customers refused to patronize defendant, and in that sense he was unable to deliver such business. But the delivery which he did make was, we think, a substantial compliance with the contract, so far as delivery of the business was concerned.

The court, however, found that the contract was procured through false representations as to the business being done by the vendors, and this finding must be accepted as correct. The representation was to the effect that the business of the vendors amounted to between $100 and $125 per week, and the court found that it was substantially less than $100 per week. This, of course, justified a rescission by defendant if promptly made on discovery of the fraud, unless the situation of the parties had been so changed through the execution of the contract that the *status quo* could not be restored. The court found that at the time of the attempted rescission and at the trial defendant was not able to restore plaintiff and his assignor to the situation they were in with respect to said business when the business was delivered to defendant. It is urged that the evidence does not support this finding.

We think it does. The vendors immediately retired from the laundry business, as the court found that they had agreed to do. Defendant at once advertised that it had purchased the business of the vendors. A goodly portion of the customers refused to patronize defendant, and doubtless transferred their patronage to other laundries. The evidence shows that the business done by defendant on the routes transferred by plaintiff to defendant decreased twenty per cent in the second week from the amount done in the first week. It is clear that the defendant could not return to the vendors the business that they had in fact delivered to defendant. It is highly probable that many of the customers would refuse to go back to the vendors, if they should return to the business, but would insist on giving their patronage to defendant. The *status quo* could not be restored.

The situation brings the case within the rule laid down in the ably considered case of *Snow* v. *Allen,* 144 Mass. 546, [59 Am. Rep. 119, 11 N. E. 764], where it is said: "A civil pro-

ceeding is not intended to inflict punishment upon anyone, still less a punishment 'which' shall inure to the advantage of another, who is sufficiently protected when he has received full indemnity for all the injury he has suffered.''

*Brockhaus* v. *Schilling*, 52 Mo. App. 75, is a case which in its essential features is very similar to the case at bar. It was a case where a saloon business had been sold. The buyer brought an action to rescind, alleging fraud. The court held that because the seller could not be restored to his original position the action would not lie; that no right of rescission exists ''where there has been such a change of circumstances, through lapse of time or otherwise, as disables the purchaser from putting the seller *in statu quo.*''

Where upon the sale of a business it becomes impossible, as a result of the execution of the contract, to place the parties *in statu quo*, there can be no rescission of the contract. (*Bailey* v. *Fox*, 78 Cal. 389, [20 Pac. 868].)

In the case at bar there was evidence to the effect that the chattels sold to and still used by defendant were of the value of $300 and more. This left but $300 as the supposed value of the goodwill of the business sold. Because of the misrepresentations as to the amount of business done the court allowed damages to defendant in the sum of $100. The defendant is still in full possession of the chattels (save one horse, which it sold), and carrying on the business transferred to it, and has at all times been in receipt of the profits therefrom, and has never made any offer to account for such profits.

It was held in *Martin* v. *Burns Wine Co.*, 99 Cal. 355, [33 Pac. 1107], that the failure to offer to restore a small amount of the dividends received from stock which were the subject of a fraudulent sale was fatal to the right to rescind.

On the whole case the judgment rendered by the learned trial judge seems to do justice, and we can see no reason for disturbing the action of the trial court.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.